[Filed June 24, 1891.]

## NEIL McLEOD *v.* O. M. SCOTT ET AL.

MANDAMUS—LIQUOR LICENSE—COUNTY CLERK.—In an application for an alternative writ of mandamus to the county court for refusing to grant a liquor license, it is improper to make the county clerk a party unless it be made to appear that he has refused to perform some act which the law specially enjoins upon him by virtue of his office.  Until such refusal he is not in default.

WRIT OF MANDAMUS, REQUIREMENTS OF.—The writ of mandamus should contain every material fact alleged in the petition upon which the plaintiff relies, making or creating the duty upon the defendant to act or do the particular thing which the plaintiff demands.

LIQUOR LICENSE—PAYMENT TO THE COUNTY TREASURER.—A party wishing to apply for a license to sell intoxicating liquors in quantities less than one gallon must pay into the county treasury the amount of the tax before the license can issue; and if the county court refuse the license the party cannot sue the county to recover back the sum paid.  *Trainor* v. *County of Multnomah*, 2 Or. 214, followed.

LIQUOR LICENSE—REFUSAL OF THE COUNTY COURT TO ISSUE—REMEDY.—A party applying for a license to sell intoxicating liquors in quantities less than one gallon, having complied with all the pre-requisites of the statute, is entitled to the license; and if the same be refused, has his remedy by a resort to the revisory court.

COUNTY COURT—APPROVAL OF BOND.—When a bond in legal form and proper conditions is presented to the county court with the requisite number of sureties, who severally justify in the proper form and amount, it is the duty of such court to approve the bond.  In such case they have some discretion and no more than other persons called on to approve bonds.  They have no right to disregard the affidavits without legal proof, and they have no right to reject the sureties without at once giving the reason and a speedy opportunity to meet the facts or to supply other sureties.

"MAY" WHEN USED IN STATUTE, MEANING OF.—It is a general principle of statutory construction that when the word "may" is used in conferring

power upon an officer, court or tribunal and the public or a third person has an interest in the exercise of the power, then the exercise of the power becomes imperative. *Kohn* v. *Hinshaw*, 17 Or. 308, and *Smith* v. *King*, 14 Or. 10, approved and followed.

Liquor License—Refusal to Issue—Mandamus.—If the county court improperly refuse to grant a liquor license to a person who complies with the pre-requisites of the statute on that subject, mandamus will lie to compel such license to issue. The writ of review provided by section 538, Hill's Code, is not an adequate remedy in such case.

On Rehearing.

Mandamus—Statement of Facts in Writ.—A writ of mandamus must itself state facts sufficient to authorize the court to grant the relief sought. It may be demurred to or answered but cannot be aided by reference to the allegations of the petition on which the writ was issued.

Sherman county: R. P. Boise, Judge.

Plaintiff appeals. Reversed; on rehearing, affirmed.

This is an application for a writ of mandamus to the county court of Sherman county requiring said court to grant the plaintiff a license to sell spirituous liquors in quantities less than one gallon in Grant's precinct in said county. The facts alleged in the petition for the writ bring the plaintiff within the law authorizing a license for such purpose. It appears from the record before us that the county court of said county, notwithstanding such compliance, refused the license. It is true the record of the county court recites that the bond tendered was insufficient, but no specific objection was made to it either as to form or substance. The other facts necessary to a proper understanding of the case will be noted in the opinion.

*J. L. Story,* and *C. H. Carey,* for Appellant.

The county court in the exercise of its jurisdiction over the subject of granting grocery or liquor license, and the conduct of county business generally, under section 896, Hill's Code, is a court of special and limited jurisdiction. (*Johns* v. *Marion Co.* 4 Or. 46; *Thompson* v. *Multnomah Co.* 2 Or. 37; *State* v. *Officer,* 4 Or. 180.)

A county court while in the transaction of county business in examining an application for a liquor license, is

acting both ministerially and quasi-judicially, and their action in such matters may be controlled by mandamus, being ministerial in character. (*Kendall* v. *United States*, 12 Pet. 524; *Uniontown* v. *Commonwealth*, 34 Penn. St. 293; *State* v. *Savannah etc. Co.* 26 Ga. 665; *State* v. *County Judge*, 7 Iowa, 186; *State* v. *Bailey*, 7 Iowa, 390; 2 Bouv. Law Dic. 94; *Wood* v. *Strother*, 76 Cal. 545; 9 Am. St. Rep. 249; *Ex parte Spring Valley Water Works*, 17 Cal. 132; *Lake Merced Water Co.* v. *Cowles*, 31 Cal. 215.)

But if the county court be acting judicially, and have a discretion in the matter under consideration, they must exercise that discretion reasonably and fairly, and any abuse of their discretion may be controlled by mandamus. (*Ex parte Bradley*, 7 Wall. 377; *State* v. *Lafayette Co.* 41 Mo. 221; *Glencoe* v. *People*, 78 Ill. 389; *People* v. *Sup. Court*, 10 Wend. 285; *Stockton R. R. Co.* v. *Stockton*, 51 Cal. 339; Tapping on Mandamus, 14; *Wood* v. *Strother*, 76 Cal. 545; 9 Am. St. Rep. 249.)

Mandamus to an inferior court is in the nature of appellate jurisdiction. (*Ex parte Crane*, 5 Pet. 193; *People* v. *Bacon*, 18 Mich. 253; *Russell* v. *Elliott*, 2 Cal. 245; *Regina* v. *Recorder*, 1 Eng. L. and Eq. 294; *Costello* v. *St. Louis etc. Court*, 28 Mo. 274; *Wood* v. *Strother, supra.*)

Mandamus is the proper remedy although there may be another remedy provided by law if the remedy at law is not a plain, speedy and adequate remedy, and would not afford the relief prayed for. (*Ex parte Spring Valley Water Works*, 17 Cal. 136; *Fremont* v. *Crippen*, 10 Cal. 215; *In re Trustees of Williamsburg*, 1 Barb. 34; *Babcock* v. *Goodrich*, 47 Cal. 488; *State* v. *Wright*, 10 Nev. 167; *King* v. *Bank of England*, Doug. 524; High's Extr. Leg. Rem. §§ 17, 23; *Porter Tp.* v. *Jersey Shore*, 82 Pa. St. 275.)

Review was not appellant's remedy. Certiorari lies only to review judicial and not ministerial proceedings. (*Thompson* v. *Multnomah Co.* 2 Or. 34.)

It is very doubtful if the action of the county board of commissioners, in refusing to grant a license to relator, were in the nature of judicial proceedings. (*Townsend* v. *Copeland*, 56 Cal. 612; *Williams* v. *Supervisors*, 65 Cal. 160.)

Certiorari lies only to review the proceedings of an inferior court where the court acted without jurisdiction, or exceeded its jurisdiction, no matter whether the court was acting in a judicial or ministerial capacity. (*People* v. *Dwinelle*, 29 Cal. 632; *Central Pac. R. R. Co.* v. *Placer Co.* 46 Cal. 667.)

Error in the exercise of the court's jurisdiction is not a proper case for the writ. (*Alexander* v. *Municipal Court*, 66 Cal. 387.)

*Huntington & Wilson*, for Respondents.

The alternative writ does not state facts sufficient to entitle the appellant to the relief sought in that it does not state the facts according to the petition showing defendant's obligation to perform the act. (Hill's Code, § 596.)

Section 593, Hill's Code, provides that the writ of mandamus may require courts, corporations, boards, officers, or persons to exercise their judgment or proceed to the discharge of their or his functions, but it shall not control judicial discretion, and shall not issue when there is a plain, speedy and adequate remedy in the ordinary course of the law.

The writ of review furnishes an adequate remedy. (Hill's Code, § 591; Session Laws, 1889, 134.)

Before a license can be granted, it is necessary that the applicant comply with all the provisions of the statute relative to the granting of license and make proof of such compliance to the court. The bond must be approved before a license can issue. Appellant does not seek to compel the court to approve the bond. (Hill's Code, § 596.)

Judicial discretion is so far involved in determining whether or not the bonds filed were in accordance with the statute or the sureties thereon were sufficient, that mandamus will not lie. (*Parker* v. *Board of Trustees*, 54 Mich. 308; High Ex. Leg. Rem. §§ 46, 48; *State ex rel.* v. *Commissioners*, 8 Nev. 394; *Durham* v. *M. & M. Co.* 9 Or. 43.)

Judicial discretion is also involved in determining whether or not the signatures of a majority of the legal voters of the

precinct wherein appellant wished to sell liquor had been obtained. (*Howland* v. *Eldridge*, 43 N. Y. 457; *State ex rel.* v. *Commissioners*, 8 Nev. 394; High Ex. Leg. Rem. § 44.)

When proper action has once been taken in this class of cases, it is not the duty of any appellate court to compel a rehearing. (High Ex. Leg. Rem. § 328; *Parker* v. *Board of Trustees, supra.*)

Before this writ can be made peremptory, such a state of facts must be presented as to show that the petitioner has a clear right to the thing demanded, and that a corresponding duty rests upon the officer to perform that particular thing. (High Ex. Leg. Rem. § 32.) And if a reasonable doubt exist, the county court is entitled to the benefit of it. (High Ex. Leg. Rem. § 48.)

When the record is silent as to evidence, this court cannot presume there was no evidence or that the court acted arbitrarily. (*Toole's Appeal*, 90 Penn. St. 376.)

The county court may grant a license, says the statute. In this class of statutes, may never means must or shall. (*Crowley* v. *Christensen*, 11 Sup. Ct. Rep. 13; *State ex rel.* v. *Pearse*, Neb. March, 1891, 48 N. W. Rep. 391; *Perry* v. *City Council*, Utah, Jan. 30, 1891, 25 Pac. Rep. 739; Sedgwick Stat. and Const. Constr. 375, note; *State* v. *Justices etc.* 39 Mo. 521; Endlich Inter. Stat. § 314.)

New rights are not created by implication, and in such case permissive language will not be construed in a mandatory sense. (Endlich Inter. Stat. § 314.)

Until all the conditions of the statute have been fulfilled, the county court cannot issue a license. (*State* v. *Pearse, supra; Atty.-Gen.* v. *Justices*, 5 Ired. 315; *Petition of Raudenbusch*, 120 Pa. St. 328; *Schlaudecker* v. *Marshall*, 72 Pa. St. 200.)

Previous to 1889, the word shall was used in the statute instead of may, but by the act of 1889 the phraseology was changed from shall to may. This evinces a legislative intent to change the statute from a mandatory requirement to an authority that is discretionary or permissive.

Strahan, C. J.—The first question which requires our attention is, the proper construction of the statute in relation to the granting of license to sell spirituous, malt or vinous liquors in this state in less quantities than one gallon. The statute in force, when the application for license was made by the plaintiff, was the act of February 18, 1889. It is entitled "An act to regulate the sale of spirituous, malt and vinous liquors, and to prevent the sale thereof without first having obtained a license therefor, and to repeal all laws and parts of laws in conflict therewith." The first section provides that no person shall be permitted to sell spirituous, malt or vinous liquors in this state in less quantities than one gallon without having first obtained a license from the county court of the proper county for that purpose.

The second provides that every person obtaining a license to sell spirituous, malt or vinous liquors shall pay into the treasury of the county granting such license the sum of four hundred dollars per annum, and in the same proportion for a less period; or two hundred dollars per annum, and in the same proportion for a less period, to sell malt liquors only.

Section 3 among other things provides that every person applying for such license before securing the same shall execute to such county a bond in the penal sum of one thousand dollars, with two or more sufficient sureties, to be approved by such court with certain specified conditions; and it is further provided that in case of a violation of the foregoing conditions by any person giving such bond, he shall be liable to pay a fine of not less than fifty nor more than two hundred dollars for such violation, and the bond so given as aforesaid by such person shall also be liable to be prosecuted as thereinafter prescribed.

Section 4 provides that any person wishing to sell spirituous, malt or vinous liquors, before obtaining a license as hereinafter provided, shall, at his own trouble and expense, obtain the signatures of an actual majority of the whole number of legal voters in the precinct in which he

wishes to carry on said business to a petition to said county court praying that said license be granted; and no applicant shall be deemed to have a majority of the legal voters of such precinct whose petition does not contain the names of a number of legal voters of such precinct equal to a majority of all the votes cast in such precinct at the last preceding general election, and greater than the whole number of names of legal voters of such precinct which may be signed to any remonstrance against the granting of such license.

Section 5 provides that when the signatures of an actual majority of the whole number of legal voters have been obtained, to be determined as provided in the preceding section, the applicant shall at his own expense cause the said petition to be published in such county for four consecutive weeks in any daily or weekly newspaper published in such county, together with notice of the day on which he will apply to the county court for such license; and if no paper be published in the county the petition and notice shall be plainly written and posted in three of the most public places of such precinct, and proof of such posting shall be made by the affidavit of one of the petitioners and two resident householders of the precinct.

Section 6 provides that on the applicant producing to the county court the receipt of the county treasurer for the payment of the sum hereinbefore prescribed and proof of compliance with all the preceding provisions of this act, the county court may give him a license of the character and for the term his receipt may call for. (Session Acts, 1889, 9.) These are the material provisions of the statute in relation to obtaining a license to sell intoxicating liquors.

The petition and the exhibits attached to it and accompanying the same showed that the petitioner had complied with every provision of the statute except that on the day which his notice specified he would present his petition to the county court; and at the time the same was presented he offered a bond which was made payable to the county

court and not to the county, as the law required. Upon the plaintiff's application, the further hearing of said petition was continued until the next succeeding day, at which time the petitioner presented a bond which obviated the irregularity in the first; and after hearing the application, the same was refused, and the following entry made by the county court: "Now on this day came on to be heard the petition of M. McKenzie and others in the above matter, continued from October 8th; and it appearing that the bond of Neil McLeod, with August Buchler and C. M. Fonts as sureties, which was on file with the clerk of this court, and which was taken from the files on October 8th by J. L. Story, counsel for the petitioner, in the presence of this court at his own request, and with the promise to return the same to this court in good order, was on this day returned to this court; and the said bond showed it had been altered or tampered with while removed from the files in this particular, to wit: a scroll has been drawn around the word 'seal' opposite the signature of C. M. Fonts, no scroll appearing there when the said paper was taken from the files. Now, therefore, the court condemns the act of said J. L. Story in altering or allowing the same to be altered, the papers of this court while in his possession. And it further appearing that a new bond is this day filed by the said Neil McLeod with M. McKenzie, George Gray and Walter M. Fraine as sureties, and the same is not approved. And it further appearing that the applicant has failed to comply with all the provisions of the statute in such matters made and provided, and that no sufficient bond as required by law has been executed to this county, and it further appearing to this court that said petition and application should not be granted, it is therefore considered, ordered and adjudged that said petition and application be and the same is hereby disallowed and refused."

Upon the refusal by said court to grant the license as prayed for, the plaintiff applied for an alternative writ of mandamus to the county court, by which they were required

to grant the license or show cause for its refusal.   This writ was directed to the defendants composing the county court of said county and to the clerk as well.

The reason for sending the writ to the clerk does not appear to us, because it does not seem that he refused to perform any duty which the law specially enjoined.   If he should refuse to issue the license after the same is authorized by the court, then no doubt compliance with such order might be compelled by means of this writ, but until such refusal or failure, it is not perceived that he is in default. As to the county clerk, therefore, no sufficient cause is shown for the issuance of the writ to him.

The writ itself does not set out the facts from which it is claimed by the plaintiff the duty arises to issue the license.   The defendants demurred to the writ for that reason; but the demurrer having been overruled, they filed their answer.

Hill's Code, § 598, provides:   " On the return day of the alternative writ, or such further day as the court or judge thereof may allow, the defendant on whom the writ shall` have been served may show cause by demurrer, or answer the writ in the same manner as a complaint in an action." There can be no question as to the proper practice in such case.   The writ itself ought to contain every material fact alleged in the petition upon which the plaintiff relies, making it the duty of the defendant to act, or do the particular thing which the plaintiff demands.   (Moses Mand. 206.)

But the defendants refusing to stand on their demurrer and having answered over, the case was argued in the court below as well as in this court upon the theory that the petition and exhibits might be looked into for the purpose of finally determining the rights of the parties to this proceeding.   It is true respondent's counsel made the point upon the argument here that the writ itself ought to contain all the requisite facts upon which the plaintiff relies, and in that we think he is correct; but the case was argued

by both sides on the further assumption that the petition and exhibits might be looked into, and we have concluded that after answering over and proceeding to a trial on the merits, and treating the petition and exhibits as being before the court, it is best to look into the entire record that was before the court below and endeavor to ascertain what duty devolved upon the defendants under the facts disclosed by the record.

These defendants answered the writ and showed cause as follows: "Come now the defendants, O. M. Scott, John A. Moore, and Robert J. Ginn, above-named, and returning the writ heretofore served in the above entitled case upon them, show why they have not issued the license to Neil McLeod mentioned in said writ as follows:

"1.   That the receipt produced to the county court of Sherman county at the time said Neil McLeod presented a petition for the liquor license referred to in the writ aforesaid from the treasurer of said Sherman county, does not name a definite period for which a license should issue, and does not name any person to whom a license should issue, and does not set forth for what purpose the money named therein was paid to the county treasurer.

"2.   That said Neil McLeod never executed to said Sherman county a bond in the penal sum of $1,000 with two or more sufficent sureties as by law required; and that said O. M. Scott, county judge, and said John A. Moore and Robert J. Ginn, county commissioners, sitting as county court in and for said county, never approved any bond presented or filed by said Neil McLeod, but found and adjudged that the so-called bond filed by him on October 8, 1890, was not properly executed, was insufficient in substance and form, and that it was not executed by two or more sufficient sureties; and further found and adjudged that the bond presented by Neil McLeod on the ninth day of October, 1890, was not executed by two or more sufficient sureties, but found that the sureties were insufficient, and therefore refused to approve such bond.

"3.   That at the time of the presentation to such county court of the petition praying that such license be issued for the sale of liquors in Grant precinct, Sherman county, Oregon, no evidence was presented or offered tending to show and it was not proved or shown that said petition was signed by an actual majority of the whole number or any of the legal voters in said precinct, nor tending to show that said petition was signed by a number of legal voters of such precinct equal to a majority of all the votes cast in said precinct at the last preceding election, nor that said petition was signed by any legal voters, nor that the names appearing upon said petition were the names of legal voters of said precinct, nor that the names appearing upon said petition were placed there by such persons.

"4.   That at the time of the presentation of said petition, said Neil McLeod failed to produce to said county court any proof of compliance with all the provisions of sections 1, 2, 3, 4, 5, and 6 of the act of the legislative assembly of the state of Oregon, entitled 'An act to regulate the sale of spirituous, malt and vinous liquors, and to prevent the sale thereof without first having obtained a license therefor, and to repeal all laws and parts of laws in conflict therewith,' filed in the office of the secretary of state, February, 1889, all of which more fully appears by the records and files of said court in said matter which are hereby referred to and made a part of this return.

"5.   That at the time said county court refused to grant said petition and to issue said liquor license, it found and determined that said petitioner had failed to comply with all the provisions of said law, and that it was for the best interests of said Sherman county that said petition should not be granted or said license issued, and that in the exercise of a wise and sound discretion under the laws of this state it could grant or refuse such petition."

It will be observed that this answer does not controvert a single fact upon which the writ issued.   It refers to the proceedings had in the county court and which are appended

to the return.   A reference to those papers shows that the
first bond tendered was informal because made payable to
the county court instead of Sherman county; but the bond
tendered on the ninth of October, 1890, to which day the
proceeding had been adjourned, is in proper form, con-
ditioned according to law, and is for the sum of one thous-
and dollars, and is signed by three sureties.   To this bond
is also attached the affidavits of the sureties to the effect
that each is a resident and householder within the State of
Oregon, and worth the sum of $1,000 over and above all
just debts and liabilities and exclusive of property exempt
from execution.   Upon the argument, counsel failed to point
out any defect in this bond, only that it was filed on the
ninth day of October, to which day the hearing had been
adjourned.   The treasurer's receipt, which is also attached,
is as follows:

"Wasco, Oregon, October 6, 1890.

"Received from Neil McLeod two hundred dollars for
liquor license to sell in Grant precinct, Sherman county,
Oregon.

"$200.                              "Levy Armsworthy,
                         "County Treasurer Sherman Co., Or."

Many objections are taken to this receipt by the return,
but they are of a nature that do not require special notice.
They are so utterly frivolous that a discussion of them
would seem wholly out of place.   All of the other objections
suggested by the return seem equally unfounded when
examined in the light of the record attached to the return.
The practical question therefore is, whether or not, conced-
ing the plaintiff has fully complied with all the require-
ments of law in relation to the granting of license to sell
intoxicating liquors, the county court may capriciously or
at its mere will and pleasure, or because in the opinion of
that court the policy of the law is wrong, refuse to execute
it by granting a license when its terms have been complied
with.

But before proceeding to consider that question, it may

be proper to remark that the legislature evidently had two main objects in view in the enactment of this law. The first was, to place such restraint about the seller of intoxicating liquors as would tend to compel a compliance with certain restrictive requirements, the effect of which would be to mitigate some of the evils resulting from the traffic, and for this purpose a bond with certain stringent provisions was required. In the second place, a tax was levied upon the business, to be paid into the county treasury by the seller, over and above the general tax on his property, for reasons founded in public policy and in the past experience of the state on that subject. In addition to this, the tax must be paid into the county treasury before the license can issue, and if the county court refuse to issue the same, the party cannot recover back the money paid. (*Trainor v. County of Multnomah*, 2 Or. 214.)

Hill's Code, § 593, defines when and to whom the writ of mandamus may issue, as follows: "It may be issued to any inferior court, corporation, board, officer, or person, to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station. But though the writ may require such court, corporation, board, officer, or person to exercise its or his judgment, or proceed to the discharge of any of his or its functions, it shall not control judicial discretion. The writ shall not be issued in any case where there is a plain, speedy and adequate remedy in the ordinary course of law."

Having said this much by way of preliminary statement, we proceed to consider the real question at issue. Did the plaintiff by a compliance with the law acquire a right to have a license issue which the court was not at liberty to refuse? This identical question was raised in this court for the first and only time so far as we have been able to discover, in *Trainor* v. *County of Multnomah, supra,* and seems to have been answered in the affirmative. That was an action to recover back money paid over to the county treasurer for license to sell spirituous liquors, which license

was refused by the county court. In disposing of that question, this court said: "Having complied with all these requirements, the applicant is entitled to a license; and if the same be refused, has his remedy by a resort in a proper manner to the appellate or revisory court." And the court continued: "The payment of the amount required by statute is a condition precedent to his applying for a license and is not a deposit in the hands of the county treasurer which can be withdrawn at the pleasure of the applicant, but goes at once into the county treasury, and becomes at once a part of the general county funds, and cannot be distinguished from the other funds of the county, and can never become the foundation for an action for money had and received, either against the county or its treasurer."

If this last extract state the law correctly and the respondent's contention were sustained, an application for a license would become a very hazardous proceeding. The plaintiff could not be heard in court until he paid over his money to the treasurer. Though he had complied with all the law on the subject, the court might, without any reason therefor appearing upon the record, refuse to grant a license, which action of the court is final because discretionary, and the money paid could not be recovered back because its payment was a condition precedent to his being heard and the same had been covered into the treasury. A position which leads necessarily to such consequences ought to be sustained by very conclusive authorities before we are asked to give it our sanction. But the decided weight of authority seems to be the other way.

*Potter* v. *Common Council*, 59 Mich. 8, which was a proceeding to compel by mandamus the town council to approve a liquor dealer's bond, is identical in principle with this case. In that case the court said: "The statute itself has fixed the conditions, and nothing is left to the council except to pass upon the sufficiency of the sureties. But this is only so far within their discretion that they may inquire where there is substantial reason to do so,

beyond the mere general averments of the affidavits of justification. In this they have some discretion and no more than is possessed by other persons called on to approve sureties. They have no right to disregard the affidavits without legal proof, and they have no right to reject sureties without at once giving the reason and giving a speedy opportunity to meet the facts or supply others."

*Amperse* v. *Common Council*, 59 Mich. 78, involves the same question and was decided the same way. In that case the court said: "The duty of this board under the statutes is a simple one. They are concerned under the law, solely with these questions: Is the bond proper in form and the penalty therein named sufficient? Are the bondsmen residents of the municipality and financially responsible for their undertaking? If they are not satisfied as to any of these matters, it is their duty to reject the bond and to acquaint the petitioner with the grounds upon which they reject it, so the bond may be remedied, if possible. If these questions are found in the affirmative, it is the duty of the board to approve it. They have no power to arbitrarily reject a bond without having any valid reason, or without assigning any good reason therefor. And we think the reason for rejecting the bond should appear of record."

*State ex rel. Adamson* v. *La Fayette Co. Ct.* 41 Mo. 221, is another case where a county court capriciously refused to approve a bond without giving any reason for its action. And the court said: "In approving the sheriff's bond as collector of the state and county revenue, the justices of the county court act in a ministerial and not in a judicial capacity. Their discretion is confined to an examination of the sufficiency of the securities offered, and that must be a sound legal discretion and not capricious, arbitrary or oppressive." And *Ex parte Candee*, 48 Ala. 386, is to the same effect.

*In re Prospect Brewing Co.* 127 Pa. St. 523, is another case where an evasive return was made to an alternative

writ of mandamus issued in a liquor license case and the writ was made peremptory. And in 11 Am. & Eng. Ency. of Law, 662–3, the principle is stated that when a discretion is vested in a designated body or person to grant license to sell intoxicating liquors, such person or body cannot be controlled in the honest exercise of such discretion; but if such authorities in the arbitrary exercise of their discretion, refuse without sufficient reason to issue a license to a suitable person, they will be compelled by mandamus to issue the license.

But it was argued on behalf of the respondents that in section 6 of the act of 1889, *supra,* the word may was used instead of the word shall, which was contained in the former statute, and that by this change of terms the legislature intended to and did vest in the several county courts of the state a discretion to issue a license to sell spirituous liquors according to their own sense of propriety. There is much force in this argument, but we do not think it is decisive. The law still provides for the payment of the money before a license can issue, which is not recoverable back if the same be refused, as we have seen. In addition to this, the petitioner must incur a considerable expense in securing the majority of all the legal voters of the precinct and in the publication of his petition and notice as prescribed by the act. These requirements of the statute are of substance, and evince an intention on the part of the legislature that upon compliance with the terms of the act a license would issue.

Is the change in the phraseology above noticed sufficient of itself to overthrow the plain intent deducible from the other portions of the act? We think not. Besides this, it was held by this court in *Kohn* v. *Hinshaw,* 17 Or. 308, that it is a general principle of statutory construction that where the word may is used in conferring power upon any officer, court or tribunal, and the public or a third person has an interest in the exercise of the power, the exercise of the power becomes imperative. And Endlich Inter. of Stat.

§ 310; Sedgwick Stat. and Const. Law, 438; Potter's Dwarris Stat. 220, note 27, are referred to as authority. *Smith* v. *King*, 14 Or. 10, is to the same effect. And the undoubted weight of authority is the same way. (*People ex rel. Brokaw,* v. *Commissioners,* 6 Law. Rep. Ann. 161.) In the light of these authorities the defendants' contention on this point cannot be sustained.

But it was contended by respondents that mandamus could not issue to control judicial discretion. This is true, not only as a general principle of law but by the letter of the statute; but we have shown that the county court in the sense contended for upon the argument was not vested with any such discretion. The length of this opinion precludes a full examination of the cases to distinguish where mandamus is and where it is not the proper remedy in case of a refusal of license; but in the view we have taken of the statute in this state we hold it to be a proper remedy here; and this construction is sustained by these authorities in addition to those already referred to. (*Bean* v. *County Court,* 33 Mo. App. 635; *Seymour* v. *Ely,* 37 Conn. 103; *State ex rel.* v. *Ruark,* 34 Mo. App. 325; *McLaughlin* v. *Comrs.* 7 S. C. Rep. 375; *People ex rel.* v. *Jefferds,* 2 Hun, 149; *Brown* v. *Atkin,* 1 Utah, 277; *Goss* v. *Common Council,* 44 Mich. 319; *State ex rel.* v. *Judge,* 35 La. Ann. 248; *State ex rel.* v. *Adams,* 12 Mo. App. 436; *Braconier* v. *Packard,* 136 Mass. 50; *State ex rel.* v. *Lazarus,* 36 La. Ann. 578; *Pettigrew* v. *Washington Co.* 43 Ark. 33; *People ex rel.* v. *Osborn,* 38 Mich. 313.)

These cases do not all relate to the granting of liquor license but they illustrate the various applications of the principle under consideration. It was suggested upon the argument by respondents' counsel that the writ of review provided by section 583, Hill's Code, furnished an adequate remedy to the plaintiff in this case, and for that reason mandamus would not lie. But the remedy provided by that section is wholly inadequate to meet all the contingencies that might arise in the course of such litigation. Suppose the right claimed or denied depended upon the

existence of certain facts which could only be ascertained or known by the introduction of evidence, the writ of review would not be an appropriate proceeding in which to try the question of fact.

Let it be supposed that the county court should enter in its journal that it refused the license for the reason that the petitioner did not have a majority of the voters of the precinct, or that his sureties were wholly insolvent, and that the license was refused for one or both of these reasons. Would it be contended that this question could be re-examined on a writ of review? Other objections might be suggested just as insuperable, but these will suffice.

Respondents' counsel also argued that the treasurer's receipt was insufficient, but we do not think any particular formality is required in such case. The amount of money paid into the treasury will determine the time for which the license may properly issue. That is expressly regulated by the statute. We have examined this case in all of its legal aspects, and though reluctant to interfere with the county court, which no doubt acted and was governed solely by a sense of public duty, still we have reached the conclusion that it disregarded the rights which the statute secured to the petitioner.

We have no discretion therefore but to reverse the judgment of the circuit court, and to remand the cause to that court with directions to award a peremptory writ of mandamus to the defendants to issue a license to the petitioner to take effect and be in force from and after its issuance.

### On Rehearing.

Per Curiam.—The petition is no part of the pleadings. (Hill's Code, § 600.) This being so, the writ must be sufficient in itself to show what is claimed and the facts upon which the claim is made. It stands for the complaint, and may be demurred to or answered in the same manner as to a complaint in an action. (Hill's Code, §§ 598, 599.) That

the writ is wanting in material allegations to support the proceeding is not questioned; and upon reconsideration, we do not think it can be aided by reference to the facts in the petition. As a consequence, there was no error in the court below in dismissing the proceeding although for different reasons, and the judgment must be affirmed.